**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                                      :    Chapter 11
                                                            :
GENERAL MARITIME CORPORATION, et al.,    :    Case No. 11-15285 (MG)
                                                            :
                              Debtors.                    :    Jointly Administered

-------------------------------------------------------------x

### ORDER APPROVING (A) BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND BIDDING PROCEDURES IN CONNECTION WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion (the "**Motion**")[1] of General Maritime Corporation ("**General Maritime**") and substantially all of its direct and indirect subsidiaries, as chapter 11 debtors and debtors-in-possession (each a "**Debtor**" and collectively the "**Debtors**," and together with the non-Debtor affiliates, the "**Company**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**") for an order (a) approving bidding procedures in connection with the potential auction (the "**Auction**") and sale of substantially all of the Debtors' assets (the "**Assets**"), substantially in the form annexed hereto as Annex A (the "**Bidding Procedures**"), (b) procedures for the assumption and assignment of certain executory contracts and unexpired leases related thereto (the "**Assumed Contracts and Leases**"), substantially in the form annexed hereto as Annex B (the "**Assignment Procedures**," and together with the Bidding Procedures, the "**Sale Procedures**"), and (c) a break-up fee (the "**Break-Up Fee**") and expense reimbursement (the "**Expense Reimbursement**") in connection with the Auction and Sale and (c) the form and manner of notice thereof, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

U.S.C. §§ 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the

District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.);

and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion being adequate and appropriate under the particular circumstances; and no other or

further notice needing to be provided; and the relief requested in the Motion being in the best

interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before the

Court (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and any

objections to the requested relief having been withdrawn or overruled on the merits; and upon all

of the proceedings had before the Court; and after due deliberation and sufficient cause

appearing therefor, it is hereby FOUND AND DETERMINED THAT:

A.    The Debtors have articulated good and sufficient reasons for approving the

Bidding Procedures.  The Bidding Procedures are reasonable and appropriate and represent the

best method for maximizing the value of the Assets in the event of an Auction.

B.    The Prepetition Senior Agent on behalf of the Prepetition Senior Lenders

and the DIP Agent on behalf of the DIP Lenders (collectively, the "**Senior Lenders**") have

expended, and/or will likely expend, considerable time, money and energy pursuing the purchase

of the Assets in the event of an Auction and have engaged in extended arm's-length and good

faith negotiations.  The Break-Up Fee, the Expense Reimbursement, the Bidding Procedures, and

the Sale contemplated thereunder in the event of an Auction are the culmination of these efforts.

Recognizing this expenditure of time, energy and resources, the Debtors have agreed to pay the

Break-Up Fee and the Expense Reimbursement to Senior Lenders upon execution of an asset purchase agreement which will provide for the credit bid of up to the full amount of the claims of the Prepetition Senior Lenders and DIP Lenders for the Assets (the "**Lender Stalking Horse Agreement**").  Each of the Break-Up Fee and the Expense Reimbursement is, in the event of an Auction, (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of Bankruptcy Code section 503(b); (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Lender Stalking Horse Agreement; (iii) reasonable and appropriate in light of the size and nature of the proposed Sale, comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Senior Lenders in entering into the Lender Stalking Horse Agreement; and (iv) necessary to induce Senior Lenders to pursue the purchase of the Assets and to be bound by the Lender Stalking Horse Agreement.

C.     The Debtors have demonstrated a sound business justification for authorizing the payment of the Break-Up Fee and the Expense Reimbursement to the Senior Lenders.  The Break-Up Fee and the Expense Reimbursement have been negotiated at arm's-length and are reasonable under the circumstances.

THEREFORE IT IS HEREBY ORDERED THAT:

1.     The Bidding Procedures are hereby authorized and approved in all respects.

2.     The Assignment Procedures are hereby authorized and approved in all respects.

3.     The Notice of Stalking Horse, Auction, and Sale annexed hereto as **Annex C** is approved.

- 3 -

4.      All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

5.      The Debtors and their advisors are authorized to engage in the marketing of the Assets following the occurrence of a Trigger Event, including the entry into confidentiality agreements with potential purchasers and maintaining an electronic data room for the purposes of disseminating due diligence information.

6.      Following the occurrence of a Trigger Event,[2] the Debtors shall contact the Court to request that the Court schedule a hearing to approve the Sale of the Assets for a date that is no later than 90 days after such Trigger Event, or such other date as may be agreed to by the Debtors and the DIP Lenders.

7.      Within three days of a Trigger Event, the Debtors shall file notice of the Trigger Event with the Bankruptcy Court (the "**Trigger Event Notice**").

8.      Upon to the occurrence of a Trigger Event, the Debtors shall take any and all actions necessary or appropriate to implement the Bidding Procedures; provided, however, the Debtors and their advisors are authorized to engage in the marketing of the Assets before the occurrence of the Trigger Event, including the entry into confidentiality agreements with potential purchasers and maintaining an electronic data room for the purposes of disseminating due diligence information.

9.      The Debtors are hereby authorized in their discretion to enter into either (i) the Lender Stalking Horse Agreement or (ii) within 10 business days of the Trigger Event, an

---

[2]  For the purposes of this Order, a "**Trigger Event**," occurs upon notice, with a copy to the official committee of unsecured creditors (the "**Committee**"), from the DIP Agent at the direction of the Directing Parties of noncompliance with any of the Lenders' Milestones.

alternative stalking horse agreement with alternative bidder(s), so long as that alternative provides for (i) the payment in full in cash of the Prepetition Senior Facilities and the DIP Facility or (ii) other treatment satisfactory to the Senior Lenders (the "**Alternative Stalking Horse Agreement**").[3]

10.    Within 11 business days of a Trigger Event, or such other later date mutually agreed to by the Senior Lenders and the Debtors, the Debtors shall file with the Bankruptcy Court either the Lender Stalking Horse Agreement or the Alternative Stalking Horse Agreement (as applicable) and serve the Notice of Stalking Horse, Auction, and Sale. The Notice of Stalking Horse, Auction, and Sale shall set forth all relevant information, including (a) the Debtors' entry into a either the Lender Stalking Horse Agreement or the Alternative Stalking Horse Agreement (if applicable); (b) notice of the Bidding Procedures and information on how to obtain a copy of the Bidding Procedures; (c) the Bid Deadline; (d) the Initial Objection Deadline; (e) the time, date, and location at which the Auction will be held in the event that the Debtors receive Qualified Bids; and (f) the time, date, and location of the Sale Hearing. The Debtors shall serve the Notice of Stalking Horse, Auction on Sale on the parties identified in the Bidding Procedures Order, which notice shall be deemed sufficient.

11.    Upon execution by (i) the Prepetition Senior Agent on behalf of the Prepetition Senior Lenders and (ii) the Administrative Agent on behalf of the DIP Lenders of the Lender Stalking Horse Agreement in form and substance satisfactory to the Senior Lenders and the Debtors, the Senior Lenders shall be entitled to the Break-Up Fee and Expense Reimbursement as set forth below.

---

[3] The Debtors have reserved the right to request permission of the Court to pay a break-up fee with respect to the Alternative Stalking Horse Agreement.

12.    The Break-Up Fee and Expense Reimbursement are approved in their entirety with respect to the Lender Stalking Horse Agreement.  The Debtors shall pay the Break-Up Fee and the Expense Reimbursement to the Senior Lenders pursuant to the terms and conditions set forth in the Bidding Procedures and the Lender Stalking Horse Agreement without need for further order of the Court; provided, however, that the Break-Up Fee shall only be payable if (i) a Trigger Event occurs, (ii) the Debtors do not enter into an Alternative Stalking Horse Agreement as provided for herein, and (iii) the Senior Lenders are not the purchaser of the Assets.

13.    The deadline for filing objections to the Sale, the Lender Stalking Horse Agreement, the Alternative Stalking Horse Agreement, or the assumption and/or assignment of any of the Assumed Contract and Leases shall be 4:00 p.m. (prevailing Eastern Time) on the date that is no later than 10 business days after the Debtors file the Notice of Stalking Horse, Auction, and Sale at 4:00 p.m. prevailing Eastern Time (the "**Initial Objection Deadline**"), which date shall be clearly indicated on the Notice of Stalking Horse, Auction, and Sale; provided, however, that the Initial Objection Deadline with respect to the Committee  shall be no earlier than 20 days following a Trigger Event.  Any objections must: (a) be made in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court; (c) state with particularity the legal and factual basis for the objection and if practicable, a proposed modification to the terms of the sale that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties (the "**Objection Notice Parties**") so as to be **actually received** on or before the Initial Objection Deadline: (a) Debtors' counsel, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Kenneth H. Eckstein, Esq., Adam C. Rogoff,

Esq., and Douglas H. Mannal, Esq.; (b) counsel for the DIP Agent and the Prepetition Senior

Agent, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036-2787,

Attn: Thomas Lauria, Esq., Scott Greissman, Esq., and Andrew Ambruoso, Esq.; (c) counsel to

Oaktree, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:

Samantha Good, Esq. and Candace Wilhelm, Esq.; (d) the Senior Notes Indenture Trustee, The

Bank of New York Mellon, 101 Barclay Street, 8 West, New York, New York 10286, Attn:

Beata Harvin; (e) counsel to the Committee, Jones Day, 222 East 41st Street, New York, New

York 10017-6702, Attn: Paul Leake, Esq. and Pedro A. Jimenez, Esq.; (f) the Office of the

United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,

New York, New York 10004, Attn: Paul K. Schwartzberg, Esq.; (g) the U.S. Securities and

Exchange Commission; (h) the Internal Revenue Service; and (i) counsel to any statutory

committees appointed in these Chapter 11 Cases; and (j) counsel to the Alternative Stalking

Horse, if any.  To the extent a proper objection is timely filed by the Initial Objection Deadline,

the Debtors shall request, and the Court shall set, a hearing on such an objection as soon as

reasonably practicable.

14.    In the event that the Debtors have entered into an Alternative Stalking

Horse Agreement and an Auction occurs, the Senior Lenders shall be deemed to be Qualified

Bidders (as such term is defined in the Bidding Procedures) and shall be permitted to credit bid

the claims under their respective facilities consistent with the terms of the DIP Credit Agreement

and the order approving the DIP Credit Agreement.

15.    The Lender Stalking Horse Agreement shall include the provision of funds

for a reasonable wind-down budget for costs reasonably necessary to wind down the Chapter 11

Cases, including, without limitation, an amount for the reasonable fees and expenses of the

estates' professionals, which shall be (x) agreed to by the Debtors and the Senior Lenders and (y) subject in all cases to further approval of the Bankruptcy Court.

16.     Nothing in this Order or the Motion shall impair, prohibit, limit, or in any way restrict the rights of any entity or person that is a party to those certain Intercreditor Agreements dated May 6, 2011.

17.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

19.     This Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale, the Break-Up Fee, the Transaction Documents, the Bidding Procedures, the Assignment Procedures, and any other matter that in any way relates to the foregoing.

20.     Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be effective immediately and enforceable upon the Order's entry.

Dated: New York, New York
          December 15, 2011


_____/s/Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge

# ANNEX A
### BIDDING PROCEDURES

## BIDDING PROCEDURES FOR THE SALE
## OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

Upon the motion (the "**Motion**") of General Maritime Corporation ("**General Maritime**") and substantially all of its direct and indirect subsidiaries (together with General Maritime, the "**Debtors**"), the U.S. Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order (the "**Bidding Procedures Order**"):[1] (a) approving the bidding procedures and bidder protections (the "**Bidding Procedures**") with respect to the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**"); and (b) approving certain procedures (the "**Assignment Procedures**") related to the assumption and assignment of those executory contracts and unexpired leases related to the Assets and whose assignment is contemplated by the Sale (the "**Assumed Contracts and Leases**").

On November 18, 2011, the Court entered an interim order (the "**Interim DIP Order**") authorizing, *inter alia*, the Debtors to enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement (the "**DIP Credit Agreement**") among General Maritime as Parent, Debtors General Maritime Subsidiary Corporation and General Maritime Subsidiary II Corporation as Borrowers, Nordea Bank Finland plc, New York Branch as Administrative Agent and Collateral Agent (the "**DIP Agent**"), and various parties as Lenders thereunder (collectively, the "**DIP Lenders**", together with the Prepetition Senior Lenders as that term is defined in the Interim DIP Order, the "**Senior Lenders**").  As used herein, a "**Trigger Event**," means the nonoccurrence of any Lenders' Milestone which shall require the Debtors to immediately commence an Acceptable Sale Process, as defined in the DIP Credit Agreement.

1.    **Important Dates**

| | |
|---|---|
| Trigger Event Notice Date | No later than 3 days following a Trigger Event. |
| Stalking Horse, Auction and Sale Notice Date | No later than 11 business days following a Trigger Event. |
| Initial Objection Deadline | No later than 10 business days following the Stalking Horse, Auction and Sale Notice Date.[2] |
| Bid Deadline | No later than 70 days following a Trigger Event. |
| Auction | No later than 75 days following a Trigger Event. |
| Supplemental Objection Deadline | No later than 3 days following the Auction.[3] |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

[2] Provided, however, that the Initial Objection Deadline with respect to the Committee shall be no earlier than 20 days following a Trigger Event.

[3] Provided, however, that the Supplemental Objection Deadline with respect to the Committee shall be no earlier than 5 days following the Auction.

Sale Hearing                                No later than 90 days following a Trigger Event.


2.    **Marketing of the Assets**

The Debtors and their advisors may engage in the marketing of the Assets prior to the occurrence of a Trigger Event, including the entry into confidentiality agreements with potential purchasers and maintaining an electronic data room for the purposes of disseminating due diligence information.

The Debtors may afford any bona fide interested party the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion. The Debtors shall, after consultation with the Steering Committee (as defined in the DIP Credit Agreement) (unless such consultation presents a conflict-of-interest), not be obligated to furnish any due diligence information after the Bid Deadline (defined below).

**Parties interested in conducting due diligence should contact Moelis & Co., 399 Park Avenue, 5th Floor, New York, New York 10022, (212) 883-3800, Attn: Thane Carlston (thane.carlston@moelis.com), and Zul Jamal (zul.jamal@moelis.com).**

Any entity that wishes to conduct due diligence with respect to the Assets must deliver to (i) counsel to the Debtors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 Attn: Kenneth H. Eckstein, Esq. (keckstein@kramerlevin.com); Adam C. Rogoff, Esq. (arogoff@kramerlevin.com) Douglas H. Mannal, Esq. (dmannal@kramerlevin.com); and (ii) Moelis & Co., 399 Park Avenue, 5th Floor, New York, New York 10022, (212) 883-3800, Attn: Thane Carlston (thane.carlston@moelis.com), and Zul Jamal (zul.jamal@moelis.com), the following: (a) an executed confidentiality agreement in form and substance satisfactory to the Debtors, and (b) at the Debtors' discretion, the Debtors may require a written statement of interest demonstrating to the Debtors' satisfaction a bona fide interest to purchase the Assets and the ability to make a Qualified Bid (as defined below), which includes, *inter alia*, a purchase price range, the proposed structure and financing, if any, of the transaction, any additional conditions to closing that such entity may wish to impose, and the nature and extent of additional due diligence such entity may wish to conduct.

Any party delivering such a confidentiality agreement and, if necessary, a statement of interest demonstrating the financial wherewithal to consummate an Alternative Stalking Horse Agreement (as defined in paragraph 4 below) may be deemed by the Debtors, after consultation with the Steering Committee (unless such consultation presents a conflict-of-interest), to be reasonably likely to be able to close a proposed transaction, if selected as the Successful Bidder (as defined below), within a time frame acceptable to the Debtors (such person or entity, a "**Potential Bidder**"). After compliance with the foregoing, the Debtors may allow Potential Bidders to conduct due diligence with respect to the Assets.

     3.      **Mailing the Notice of Stalking Horse, Auction, and Sale**

On a date no later than 11 business days following a Trigger Event or such other later date as mutually agreed to by the Senior Lenders and the Debtors, the Debtors shall file and serve (i) notice of the Stalking Horse APA (as defined below) for the sale of the Assets entered into by the Debtors pursuant to the following paragraph and (ii) notice of the Auction and Sale setting forth all relevant information, including notice of the Bidding Procedures and information on how to obtain a copy of the Bidding Procedures; the Bid Deadline; the Initial Objection Deadline; the time, date, and location of that the Auction will be held in the event that the Debtors receive Qualified Bids; and the time, date, and location of the Sale Hearing (the "**Notice of Stalking Horse, Auction, and Sale**") by first class mail, postage prepaid, to (a) the Special and General Service Lists as those terms are defined in the Court's Administrative Order Establishing Case Management Procedures (the "**Case Management Order**"), (b) all counterparties to the Assumed Contracts and Leases, (c) all potential purchasers identified by the Debtors or their agent, and (d) any other party known to the Debtors to have or assert an interest in any of the Assets.

     4.      **The APA**

The Debtors are authorized, in their discretion, to enter into either (i) an asset purchase agreement which provides for the credit bid of up to the full amount of the claims of the Prepetition Senior Lenders and DIP Lenders for the Assets (the "**Lender Stalking Horse Agreement**") or (ii) within 10 business days of the Trigger Event, an alternative stalking horse agreement with alternative bidder(s) if such alternative stalking horse agreement provides for the payment in full in cash of the Prepetition Senior Facilities and the DIP Facility (or other treatment satisfactory to the Senior Lenders) (the "**Alternative Stalking Horse Agreement**"). The stalking horse agreement entered into by the Debtors' shall hereinafter be referred to the "**Stalking Horse APA.**"

     5.      **Free and Clear**

Except as otherwise provided in definitive documentation with respect to the Sale, all of the Debtors' rights, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Claims and Interests**").

     6.      **Break-Up Fee and Expense Reimbursement**

In the event that the Debtors and the Senior Lenders enter into the Lender Stalking Horse Agreement but the Senior Lenders are not the Successful Bidder, the Senior Lenders are entitled to (a) a "break-up fee" in an amount which is equal to 1% of the purchase price (including, without limitation, that amount of the Prepetition Senior Facilities and DIP Facility that is credit bid), as set forth in the Stalking Horse APA (the "**Break-Up Fee**") payable from the proceeds of the Sale to the Successful Bidder,[4] and (b) the reimbursement of their actual

---

[4] The Debtors reserve the right to request permission of the Court to pay a break-up fee with respect to the Alternative Stalking Horse Agreement.

and reasonable expenses related to the negotiation of the Lender Stalking Horse Agreement. (the "**Expense Reimbursement**").

7.    **Credit Bid**

Notwithstanding anything else herein, the right of the Prepetition Senior Agent on behalf of the Prepetition Senior Lenders and the DIP Agent on behalf of the DIP Lenders to credit bid, whether as the stalking horse or otherwise, up to the full amount of their claims under the Prepetition Senior Facilities and the DIP Facility, respectively, on terms and conditions satisfactory to (i) the Directing Parties (as that terms is defined in the DIP Credit Agreement) with respect to a Credit Bid by the Prepetition Senior Agent on behalf of the Prepetition Senior Lenders and (ii) each DIP Lender with respect to a Credit Bid by the DIP Agent on behalf of the DIP Lenders, shall be fully preserved in all circumstances (the "**Credit Bid**"); any Credit Bid shall be a Qualified Bid (defined below) and any bidder thereof a Qualified Bidder (defined below) for all purposes of these Bidding Procedures, provided however, that any Credit Bid shall be subject to the Senior Third Party Liens (as defined in the Interim DIP Order) which liens shall either be paid or remain on the Assets.

8.    **Qualification of Bids and Bidders**

In order to participate in the bidding process and to have a bid considered by the Debtors, each Potential Bidder must deliver a written offer or group of offers satisfying the below criteria. A "**Qualified Bidder**" is a Potential Bidder that delivers a binding bid that in the Debtors' discretion satisfies the following criteria (a "**Qualified Bid**"):

> a.    Bid Deadline. Each bid package must be delivered in written and electronic form (where available) to: (i) counsel to the Debtors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Kenneth H. Eckstein, Esq. (keckstein@kramerlevin.com), Adam C. Rogoff, Esq. (arogoff@kramerlevin.com), and Douglas H. Mannal, Esq. (dmannal@kramerlevin.com); (ii) counsel to the DIP Agent and the Prepetition Senior Agent, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036-2787, Attn: Thomas Lauria, Esq., Scott Greissman, Esq., and Andrew Ambruoso, Esq.; and (iii) counsel to the Official Committee of Unsecured Creditors (the "**Committee**"), Jones Day, 222 East 41st Street, New York, New York 10017-6702, Attn: Paul Leake, Esq. and Pedro A. Jimenez, Esq., so as to **actually be received no later than 12:00 p.m. (prevailing Eastern Time) on [   ], 2012, i.e., the such date that is no later than 70 days following the Trigger Event (the "Bid Deadline")**. The actual date of the Bid Deadline will be specifically identified in the Notice of Stalking Horse, Auction, and Sale.

- 4 -

b.    Bid Package.    Each bid must include (collectively, the "**Bid Package**"): (i) a written and signed irrevocable and binding offer letter stating that (w) the bidder offers to consummate a sale transaction on terms and conditions no less favorable than those found in the applicable Stalking Horse APA and in an amount at least equal to the Minimum Bid (as defined below), (x) confirming that the bid will remain irrevocable and binding until five business days following the entry of the Sale Order, unless such bid is determined by the Debtors to be the Back-Up Bid, in which case such bid shall remain irrevocable and binding pursuant to paragraph 11(g) hereof,  (y) that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, has relied solely upon its own independent review and investigation and did not rely on any written or oral representations except as expressly set forth in the Modified APA (as defined below), and (z) the Bidder shall serve as the Backup Bidder (defined below) until the closing on the sale with the Successful Bidder (as defined below); (ii) an executed copy of the asset purchase agreement by the Potential Bidder in accordance with its bid ("**Modified APA**"); (iii) an electronic markup of the Stalking Horse APA showing the revisions in the Modified APA; and (iv) a CD-ROM containing a clean copy of the Modified APA (formatted as a Microsoft Word document or such other word processing format acceptable to the Debtors) and the electronic markup of the Stalking Horse APA.  The Debtors shall determine whether any Modified APA that modifies the Stalking Horse APA in any respect beyond the identity of the purchasers and the purchase price is a Qualified Bid.

c.    Minimum Bid.  The amount of the purchase price in any bid for all of the Assets must provide for net cash (or cash equivalent) that is at least $500,000 more than the purchase price contained in the Stalking Horse APA plus the amount of the Break-Up Fee and, if applicable, the Expense Reimbursement[5] (the "**Minimum Bid**").

d.    Financial Information.  The Bid Package must contain such financial and other information that will allow the Debtors to make a determination as to the bidder's financial wherewithal after consultation with the Steering Committee (unless such consultation presents a conflict-of-interest) and its ability to consummate the transactions contemplated by the Modified APA, including evidence of adequate financing, any proposed conditions to closing

---

[5] The Senior Lenders shall disclose the amount of the Expense Reimbursement prior to the Auction to the Debtors, provided, however, the Debtors are not required to keep such information confidential.

- 5 -

and adequate assurance of such bidder's ability to perform under any of the Assumed Contracts and Leases and to pay all cure amounts required to assume and assign any such Assumed Contracts and Leases.

e.    Regulatory Approvals.    The Bid Package must describe all regulatory approvals the bidder will need and provide evidence of the bidder's ability to obtain all necessary regulatory approvals in a timely manner, if applicable.

f.    Executory Contracts and Unexpired Leases.    The Modified APA must identify with particularity each and every proposed Assumed Contract and Lease.

g.    Additional Bid Protections.    The bid must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment, or propose to modify any of the Bidding Procedures.

h.    Identity of Bidders.    Each Potential Bidder must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid, including the names and addresses of any members or individuals with an interest in the entity, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity.    Any Potential Bidder shall be required to provide such additional information as the Debtors may reasonably require regarding a Potential Bidder's ability to satisfy the requirements of the applicable regulatory authorities.

i.    Due Diligence.    The bid must not contain any due diligence or financing contingencies of any kind, and must affirmatively acknowledge that the bidder (i) had an opportunity to conduct due diligence regarding the Assets prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith.

j.    Consents.    Each Potential Bidder must represent that it obtained all necessary organizational approvals to make its competing bid and to enter into and perform the Modified APA and include evidence of authorization and approval from the Potential Bidder's board of

directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified APA.

k.    <u>Wind-Down Budget</u>. Each bid must include the provision of funds for a reasonable wind-down budget (the "**Wind-Down Budget**") for costs reasonably necessary to wind down the Chapter 11 Cases, including, without limitation, an amount for the reasonable fees and expenses of the estates' professionals, which shall be (x) agreed to by the Debtors and the purchaser of the Assets and (y) subject in all cases to approval of the Bankruptcy Court.

l.    <u>Deposit</u>. A Potential Bidder for the Assets must deposit 10% of the initial purchase price set forth in the Modified APA with an escrow agent selected by the Debtors (the "**Deposit Agent**") in the form of a certified check or wire transfer at least three business days before the Auction (the "**Deposit**").  The Potential Bidder shall forfeit the Deposit if (i) the Potential Bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein before the Bankruptcy Court approves the Debtors' selection of the Successful Bidder, or (ii) the bidder is the Successful Bidder and (x) withdraws the bid without the Debtors' consent before the consummation of the sale contemplated by the bid, or (y) breaches the Modified APA associated with such bid. The Deposit shall be returned to the Potential Bidder (i) as soon as practicable if the Potential Bidder is not determined to be a Qualified Bidder or (ii) no later than five business days after entry of the Sale Order if the bidder is a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not determined to be the Successful Bidder or the Backup Bidder (defined below).  The Debtors will not be required to maintain any Deposit in an interest bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.

The Debtors shall have the right, in their discretion to determine whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids, as soon as possible, and prior to the Auction.  The Debtors may reject any bid that is on terms more burdensome or conditional than the Stalking Horse APA or is otherwise contrary to the best interests of the Debtors and their estates.  In addition to the requirements above, the Debtors may request any additional information from any Potential Bidder to assist them in making their determination as to whether a bid is a Qualified Bid.  For the avoidance of doubt, the party or parties who have entered into the Stalking Horse APA with the Debtors is a Qualified Bidder.

9.      **As Is, Where Is**

The sale of any or all of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates except to the extent set forth in the applicable asset purchase agreement.

10.     **Only One Qualified Bid**

If no Qualified Bid other than the stalking horse bid is submitted, the Debtors may elect not to hold the Auction, and may proceed with the Sale Hearing to seek approval of the Stalking Horse APA.

11.     **Auction**

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct the Auction with respect to the Assets. The Auction will take place at the offices of Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 on such date that is no later than 75 days following the Trigger Event, starting at 9:00 a.m. (prevailing Eastern Time), or at such other place, date and time as may be designated by the Debtors. The actual date of the Auction will be specifically identified in the Notice of Stalking Horse, Auction, and Sale. The Auction shall be governed by the following procedures:

a.      Participation.  Only the Qualified Bidders shall be entitled to participate in the Auction, and each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative. Each Qualified Bidder must be accompanied by counsel in order to participate in the Auction. At least one day prior to the commencement of the Auction, each Qualified Bidder must confirm it will participate in this Auction; provided, however, that in the event a Qualified Bidder does not attend the Auction, the relevant Qualified Bid shall nonetheless remain fully enforceable against that Qualified Bidder in accordance herewith.

b.      Anti-Collusion.  At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged and will not engage in any collusion with any other Qualified Bidder with respect to the bidding or the Sale.

c.      Conduct of Auction.  In the discretion of the Debtors, after consultation with the Steering Committee (unless such consultation presents a conflict-of-interest), the Auction may be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid (an "**Open Auction**"); provided, however, that nothing contained herein shall prohibit the Debtors from meeting privately with any Qualified Bidder to negotiate the terms of its bid. Notwithstanding the

- 8 -

foregoing, in the discretion of the Debtors, the Auction may be conducted as a closed auction through the submission of closed bids with the results being announced at the conclusion of the Auction process (a "**Closed Auction**").

d.    <u>Bidding</u>.  Bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted prior to the Auction; Qualified Bidders for all of the Assets may then submit successive bids in increments of $500,000 (the "**Bid Increment**"); <u>provided</u>, <u>however</u>, that the Debtors, after consultation with the Steering Committee (unless such consultation presents a conflict-of-interest), shall retain the right to modify the Bid Increment at the Auction.   Any bid submitted after the conclusion of the Auction shall not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered, and neither the Debtors nor any other person shall have the obligation to seek any such order from the Bankruptcy Court.

e.    <u>Higher or Better</u>.  The Debtors reserve the right, in their sole discretion after consultation with the Steering Committee (unless such consultation presents a conflict-of-interest), to determine whether any bid is better, if not higher, than another bid submitted during the Auction. The Debtors may consider a variety of factors in making this decision, including, without limitation, the ability of the applicable Qualified Bidder to obtain the necessary regulatory approvals, any proposed conditions to closing, and the timing of the closing of the proposed transaction.

f.    <u>Successful Bid</u>.   The Auction shall continue until the Debtors determine, in their sole discretion after consultation with the Steering Committee (unless such consultation presents a conflict-of-interest) and subject to Court approval, which Qualified Bid is the highest or otherwise best offer(s) from among the Qualified Bids submitted at the Auction (such bid or bids, as applicable, the "**Successful Bid**").   The Qualified Bidder(s) submitting such Successful Bid(s) shall become the "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in its asset purchase agreement, together with any changes made thereto by the Successful Bidder at the Auction.   Within one business day after the conclusion of the Auction, but in any event prior to the commencement of the Sale Hearing (as defined below), the Successful Bidder shall (i) complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made, and (ii) supplement its Deposit by wire transfer or

- 9 -

other immediately available funds so that, to the extent necessary, such deposit equals 10% of the Successful Bid.

g.    <u>Backup Bid</u>.  At the conclusion of the Auction, the Debtors will also announce the second highest or otherwise best bid(s) from among the Qualified Bids submitted at the Auction (the "**Backup Bid**").  The Qualified Bidder(s) submitting such Backup Bid(s) shall become the "**Backup Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable asset purchase agreement, together with any changes made thereto by the Backup Bidder at the Auction.  *The Backup Bid shall remain open and irrevocable until the closing date with the Successful Bidder.*  Within one business day after the conclusion of the Auction, but in any event prior to the commencement of the Sale Hearing (as defined below), the Backup Bidder shall (i) complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Backup Bid was made, and (ii) supplement its Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such deposit equals 10% of the Backup Bid.  In the event the Backup Bidder fails to comply with the requirements of this paragraph, it will be deemed to have forfeited its Deposit.  The Backup Bidder's Deposit will be returned by the Debtors within 5 days of the closing with the Successful Bidder.

12.    **Sale Hearing**

The Successful Bid and the Backup Bid will be subject to approval by entry of an order (the "**Sale Order**") by the Bankruptcy Court after a hearing (the "**Sale Hearing**") that will take place at such time to be set by the Court on a date that is on or before 90 days following a Trigger Event.  The Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court.

The deadline for filing objections to the Sale, the Stalking Horse APA, or the assumption and/or assignment of any of the Assumed Contracts shall be 4:00 p.m. (prevailing Eastern Time) on the date that is no later than 10 business days after the Notice of Stalking Horse, Auction, and Sale (the "**Initial Objection Deadline**"), which date shall be clearly indicated on the Notice of Stalking Horse, Auction, and Sale filed with the Court on the Stalking Horse, Auction and Sale Notice Date; provided, however, that the Initial Objection Deadline with respect to the Committee shall be no earlier than 20 days following a Trigger Event.  Any objections must: (a) be made in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court; (c) state with particularity the legal and factual basis for the objection and if practicable, a proposed modification to the terms of the Sale that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of

service) and served upon the following parties (the "**Objection Notice Parties**") so as to be actually received on or before the Initial Objection Deadline: (a) Debtors' counsel, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Kenneth H. Eckstein, Esq., Adam C. Rogoff, Esq. and Douglas H. Mannal, Esq.; (b) counsel for the DIP Agent and the Prepetition Senior Agent, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036-2787, Attn: Thomas Lauria, Esq., Scott Greissman, Esq., Andrew Ambruoso, Esq.; (c) counsel to Oaktree, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Samantha Good, Esq. and Candace Wilhelm, Esq.; (d) the Senior Notes Indenture Trustee, The Bank of New York Mellon, 101 Barclay Street, 8 West, New York, New York 10286, Attn: Beata Harvin; (e) counsel to the Committee, Jones Day, 222 East 41st Street, New York, New York 10017-6702, Attn: Paul Leake, Esq. and Pedro A. Jimenez, Esq.; (f) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Paul K. Schwartzberg, Esq.; (g) the U.S. Securities and Exchange Commission; (h) the Internal Revenue Service; and (i) counsel to any statutory committees appointed in these Chapter 11 Cases; and (j) counsel to the Alternative Stalking Horse, if any.

13.    **Supplemental Objections**

In the event the Debtors choose a Successful Bidder or Back-Up Bidder other than the Senior Lenders or the Alternative Stalking Horse Bidder at the Auction or the terms of the proposed Sale are modified at the time of the Auction, the objection deadline solely with respect to (i) the Debtors' choice of such alternative Successful Bidder or Back-Up Bidder, or the modifications to the terms of the Sale to the Successful Bidder and (ii) to the extent such party did not receive notice of such cure amounts prior to the Auction, cure amounts under the Assumed Leases and Contracts, shall (a) be made in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court; (c) state with particularity the legal and factual basis for the objection and if practicable, a proposed modification to the terms of the Sale that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the Objection Notice Parties and counsel to the Successful Bidder, so as to be actually received by 4:00 p.m. (prevailing Eastern Time) on a date no later than three days after the conclusion of the Auction (the "**Supplemental Objection Deadline**"); provided, however, that the Supplemental Objection Deadline with respect to the Committee shall be no earlier than five days after the conclusion of the Auction..

14.    **Consummation of the Sale**

Following the Sale Hearing, if for any reason the Successful Bidder fails to consummate the purchase of the Assets, then, after consultation between the Debtors and the Steering Committee (unless such consultation presents a conflict-of-interest), the Backup Bidder will automatically be deemed to have submitted the highest or otherwise best bid. Thereafter, the Debtors and the Backup Bidder are authorized to immediately effect the sale of the Assets to the Backup Bidder on the terms of the Backup Bid as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, its Deposit shall be forfeited to the Debtors and the Debtors specifically reserve the right to seek all available damages from the defaulting bidder.

15.    **Extension of Deadlines and Modification of Bid Procedures**

The Debtors reserve their rights to modify the Bidding Procedures in their sole discretion, after consultation with the Steering Committee (unless such consultation presents a conflict-of-interest), at or prior to the Auction, including, without limitation, extending the deadlines set forth in the procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice.

16.    **Jurisdiction**

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, the Backup Bid, and/or any other matter that in any way relates to the foregoing.

# <u>ANNEX B</u>

## ASSIGNMENT PROCEDURES

## ASSIGNMENT PROCEDURES IN CONNECTION WITH
## THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

Upon the motion (the "**Motion**") of General Maritime Corporation ("**General Maritime**") and substantially all of its direct and indirect subsidiaries (together with General Maritime, the "**Debtors**") the U.S. Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order (the "**Bidding Procedures Order**"):[1] (a) approving the bidding procedures and bidder protections (the "**Bidding Procedures**") with respect to the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**"); and (b) approving certain procedures (the "**Assignment Procedures**") related to the assumption and assignment of those executory contracts and unexpired leases related to the Assets and whose assignment is contemplated by the Sale (the "**Assumed Contracts and Leases**"), including procedures for providing notice of assignment to parties to such Assumed Contracts and Leases (each, a "**Counterparty**").

On November 18, 2011, the Court entered an interim order (the "**Interim DIP Order**") authorizing, *inter alia*, the Debtors to enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement (the "**DIP Credit Agreement**") among General Maritime as Parent, Debtors General Maritime Subsidiary Corporation and General Maritime Subsidiary II Corporation as Borrowers, Nordea Bank Finland plc, New York Branch as Administrative Agent and Collateral Agent (the "**DIP Agent**"), and various parties as Lenders thereunder (collectively, the "**DIP Lenders**", together with the Prepetition Senior Lenders as that term is defined in the Interim DIP Order, the "**Senior Lenders**").  As used herein, a "**Trigger Event**," means the nonoccurrence of any Lenders' Milestone which shall require the Debtors to immediately commence an Acceptable Sale Process, as defined in the DIP Credit Agreement.

1.    **Important Dates**

| | |
|---|---|
| Trigger Event Notice Date | No later than 3 days following a Trigger Event. |
| Stalking Horse, Auction and Sale Notice Date | No later than 11 business days following a Trigger Event. |
| Initial Objection Deadline | No later than 10 business days following the Stalking Horse, Auction and Sale Notice Date.[2] |
| Bid Deadline | No later than 70 days following a Trigger Event. |
| Auction | No later than 75 days following a Trigger Event. |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

[2] Provided, however, that the Initial Objection Deadline with respect to the Committee shall be no earlier than 20 days following a Trigger Event.

| Supplemental Objection Deadline | No later than 3 days following the Auction[3]. |
| Sale Hearing | No later than 90 days following a Trigger Event. |

2.    **Transaction Documents**

The Debtors are authorized, in their discretion, to enter into either (i) the Lender Stalking Horse Agreement or (ii) within 10 business days of a Trigger Event, an alternative stalking horse agreement with alternative bidder(s) (the "**Alternative Stalking Horse**") if such alternative stalking horse agreement provides for the payment in full in cash of the Prepetition Senior Facilities and the DIP Facility (or other treatment satisfactory to the Senior Lenders) (the "**Alternative Stalking Horse Agreement**").  The stalking horse agreement entered into by the Debtors' shall hereinafter be referred to the "**Stalking Horse APA.**"

3.    **Assumed Contracts and Lease**

Pursuant to the Stalking Horse APA, the Assumed Contracts and Leases consist of (i) certain executory contracts (the "**Assumed Contracts**") and (ii) unexpired leases (the "**Assumed Leases**") designated to be assumed by the Debtors and assigned to the purchaser under the Stalking Horse APA (the "**Purchaser**").

4.    **Initial Notice of Assumed Contracts and Leases**

Within three business days after entry of the Stalking Horse Agreement, the Debtors will serve by first class mail an omnibus notice (the "**Initial Assignment Notice**") on each Counterparty to the Assumed Contracts and Assumed Leases (and such party's attorney, if such attorney has filed a notice of appearance in the Debtors' chapter 11 proceedings) at the last known address available to the Debtors and the notice address of such counterparty provided in each such contract or lease, if applicable.  The Initial Assignment Notice shall include an exhibit that identifies (i) the name and address of the Counterparty, (ii) the specific Assumed Contract or Assumed Lease being specified, (iii) for each Assumed Lease, the premises relating to the Assumed Lease, and (iv) the cure amount asserted by the Debtors that is necessary to cure any default under the relevant Assumed Contract or Assumed Lease pursuant to section 365 of the Bankruptcy Code (the "**Cure Amount**").

The Initial Assignment Notice shall also include (i) a description of the Purchasers and a statement as to the Purchaser's ability to perform the Debtors' obligations under the Assumed Contracts and/or Assumed Leases ("**Purchasers' Adequate Assurance**"), (ii) the date of the Initial Objection Deadline (defined below), (iii) the date of the Auction, and (iv) the date of the Sale Hearing.

The Initial Assignment Notice shall also be served upon (a) counsel to the Purchaser; (b) counsel for the counsel to DIP Agent and the Prepetition Senior Agent White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036-2787, Attn: Thomas

---

[3] Provided, however, that the Supplemental Objection Deadline with respect to the Committee shall be no earlier than 5 days following the Auction.

Lauria, Esq., Scott Greissman, Esq., Andrew Ambruoso, Esq.; (c) counsel to Oaktree, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Samantha Good, Esq. and Candace Wilhelm, Esq.; (d) the Senior Notes Indenture Trustee, The Bank of New York Mellon, 101 Barclay Street, 8 West, New York, New York 10286, Attn: Beata Harvin; (e) counsel to the Official Committee of Unsecured Creditors (the "**Committee**"), Jones Day, 222 East 41st Street, New York, New York 10017-6702, Attn: Paul Leake, Esq. and Pedro A. Jimenez, Esq.; (f) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Paul K. Schwartzberg, Esq.; (g) the U.S. Securities and Exchange Commission; and (h) the Internal Revenue Service(collectively, the "**Notice Parties**").

5.    **Initial Objections**

To the extent that any interested party wishes to object to any matter pertaining to the sale of the Assets or the assumption and assignment of an Assumed Contract or Assumed Lease, including, without limitation, Purchaser's Adequate Assurance or the Cure Amount designated in the Initial Assignment Notice, then such interested party must file a written objection (the "**Initial Objection**") with the Court on a date no later than no later than 10 business days following the Stalking Horse, Auction and Sale Notice Date at 4:00 p.m. (prevailing Eastern Time) (the "**Initial Objection Deadline**"), and simultaneously serve such Initial Objection on the following parties (the "**Objection Parties**"): (a) counsel to the Debtors. Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Kenneth H. Eckstein, Esq., Adam C. Rogoff, Esq. and Douglas H. Mannal, Esq., and (b) the Notice Parties so that it is **actually received** by each of the foregoing parties by the Initial Objection Deadline; provided, however, that the Initial Objection Deadline with respect to the Committee shall be no earlier than 20 days following a Trigger Event.

To the extent that any party-in-interest does not timely serve an Initial Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Assumed Contract or Assumed Lease; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) consented to the relevant Cure Amount, if any; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with item (i) through (iv) hereof.

6.    **Supplemental Notice of Assumed Contracts and Leases**

Within one business day of the conclusion of the Auction, the Debtors will serve by overnight mail and email or facsimile, where possible, and file with the Court an omnibus notice (the "**Auction Results Notice**") upon the Notice Parties and each of the Counterparties (and their attorneys, if an attorney has filed a notice of appearance in the Debtors' chapter 11 proceedings) at the last known address available to the Debtors and the notice address of such Counterparty provided in each such contract or lease, if applicable. The Auction Results Notice shall, *inter alia*, identify the successful bidder (the "**Successful Bidder**") and the back-up bidder

(the "**Back-Up Bidder**")[4] chosen at the Auction in accordance with the Bidding Procedures and such other information as hereinafter provided.

If and only if the bid submitted by the Successful Bidder (the "**Successful Bid**") or the bid submitted by the Back-Up Bidder (the "**Back-Up Bid**") includes (i) new executory contracts (each an "**Additional Assumed Contract**") or new unexpired leases (each an "**Additional Assumed Lease**") to be assumed and assigned by the Debtors to either the Successful Bidder or the Back-Up Bidder (as the case may be), or (ii) a different Cure Amount than the one listed in the Initial Assignment Notice (such Cure Amount, an "**Amended Cure Amount**"), then the Auction Results Notice shall include an exhibit that (a) identifies the name and address of the Counterparty, (b) identifies the specific Additional Assumed Contract and/or Additional Assumed Lease being assumed and assigned, (c) identifies, for each Additional Assumed Lease, the premises relating to the Additional Assumed Lease, and (d) the cure amount asserted by the Debtors that is necessary to cure any default under the relevant Additional Assumed Contract or Additional Assumed Leases pursuant to section 365 of the Bankruptcy Code (the "**Additional Cure Amount**").  For each Amended Cure Amount, the Auction Results Notice shall include an exhibit that identifies (w) the name and address of the Counterparty, (x) the relevant Assumed Contract or Assumed Lease, (y) for each Assumed Lease, the premises relating to the relevant Assumed Lease, and (z) the Amended Cure Amount.

The Auction Results Notice shall include, to the extent the Successful Bidder or Back-Up Bidder is not the Purchaser or with respect to the Additional Assumed Contracts and the Additional Assumed Leases, a description of the Successful Bidder and the Back-Up Bidder and a statement as to the ability of the Successful Bidder or the Back-Up Bidder to perform the Debtors' obligations under the Assumed Contracts and Assumed Leases (and, to the extent applicable, the Additional Assumed Contracts and the Additional Assumed Leases) (the "**Successful Bidder's Adequate Assurance**" or the "**Back-Up Bidder's Adequate Assurance**").

7.    **Supplemental Objections**

To the extent that any interested party wishes to object to (i) the assumption of an Additional Assumed Contract or Additional Assumed Lease; (ii) if the Successful Bidder or Back-Up Bidder is not the Purchaser, to the Successful Bidder's or the Back-Up Bidder's Adequate Assurance designated in the Auction Results Notice; or (iii) to the selection of an alternative purchaser as a result of the Auction; or (iv) the Amended Cure Amount or Additional Cure Amount, such party shall file a written objection (the "**Supplemental Objection**") with the Court no a date that is no later than three days following the Auction at 4:00 p.m. (prevailing Eastern Time) (the "**Supplemental Objection Deadline**"), and serve such an objection on the Objection Parties so that it is **actually received** by the Supplemental Sale Objection Deadline;

---

[4]  After entry of the Sale Order all references herein to "Purchaser" shall refer to the Successful Bidder.  In the event that the Back-Up Bidder is substituted for the Successful Bidder pursuant to the Sale Order, all references to the "Purchaser" shall refer to the Back-Up Bidder.  Similarly, after entry of the Sale Order, all references herein to the APA shall refer to the bid submitted by the Successful Bidder.

provided, however, that the Supplemental Objection Deadline with respect to the Committee shall be no earlier five days after the conclusion of the Auction.

To the extent that any interested party does not timely serve (x) a Supplemental Objection as set forth above, such party will be deemed to have (i) consented to the assumption and assignment of the applicable Additional Assumed Contract or Additional Assumed Lease; (ii) agreed that the Successful Bidder and the Back-Up Bidder have provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) agreed to the terms of the Sale Order; and (iv) waived any and all objections in connection with items (i) through (iii) hereof, or (y) a Supplemental Objection as set forth above, such party will be deemed, as applicable, to have (i) consented to the relevant Additional Cure Amount or Amended Cure Amount, if any; (ii) agreed to the terms of the Sale Order; and (iii) waived any and all objections in connection with items (i) through (ii) hereof.

8.  **Further Assignments**

During the period between the Auction and the Closing, the Purchaser may designate additional executory contracts or unexpired leases for assumption by the Debtors and assignment to the Purchaser (the "**Further Assignments**").  The Debtors shall serve by first class mail an omnibus notice (the "**Further Assignments Notice**") on each Counterparty to the Further Assignments.  To the extent that any interested party wishes to object to any matter pertaining to the Further Assignments, then such interested party must file a written objection (a "**Further Assignment Objection**") with the Court no later than at 4:00 p.m. (prevailing Eastern Time) on the fifteenth day after service of the Further Assignments Notice.  In the event a Further Assignment Objection is filed, such objections will be heard at a hearing to be scheduled by the Court.

9.  **Resolution and Adjudication of Objections**

Upon filing of an objection by a Counterparty, the Debtors and/or the Purchaser will contact the objecting Counterparty to attempt to consensually resolve any timely served objection.  If the Debtors and/or the Purchaser is unable to resolve an objection in response to the Initial Assignment Notice or the Auction Results Notice, (i) to the extent such objections relate to the adequate assurance of future performance by the Purchaser (each an "**Adequate Assurance Objection**"), such objections will be heard at the Sale Hearing (except in the case of an Adequate Assurance Objection to a Further Assignment, with a hearing on such an objection to be scheduled by the Court) or (ii) to the extent such objections relate to a Cure Amount, Additional Cure Amount, or Amended Cure Amount, such objections will be heard at a hearing (the "**Cure Objection Hearing**") to be scheduled by the Court at the Sale Hearing (except in the case of an Adequate Assurance Objection to a Further Assignment, with a hearing on such an objection to be scheduled by the Court).

In the event an objection relates solely as to a Cure Amount, Additional Cure Amount, or Amended Cure Amount, (each a "**Cure Objection**"), then such objecting party will be deemed to consent to the assumption of the related executory contract or unexpired lease and its assignment to the Purchaser, notwithstanding such objection.  In the event the Debtors and/or

- 5 -

the Purchaser are unable to resolve the Cure Objection prior to the Cure Objection Hearing, the Purchaser may elect not to request assumption and assignment of the related executory contract or unexpired lease as part of the Sale.

On or as promptly after the Closing as practical, the Cure Amounts, Amended Cure Amounts, or Additional Cure Amounts to which no objections have been filed, or to which the Purchaser and applicable Counterparties have agreed shall be paid by the Purchaser.

Payment of the undisputed cure amounts shall be deemed to discharge the obligation of the Debtors and the Purchaser to: (i) cure any defaults under the Assumed Contracts and Leases; and (ii) compensate, or provide adequate assurance that the Debtors will promptly compensate, any non-Debtor party to the Assumed Contracts and Leases for any actual pecuniary loss resulting from any default thereunder.  Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall have no liabilities for any claims arising or relating to or accruing post-Closing under any of the Assumed Contracts and Leases.

10.     **Reservation of Rights**

The Debtors' decision to assume and assign any of the Assumed Contracts and Leases is subject to Court approval and consummation of the Sale.  Accordingly, the Debtors shall be deemed to have assumed and assigned Assumed Contracts and Leases ultimately identified under the Transaction Documents as of and effective only upon the Closing (as defined in the Transaction Documents).  Absent a Closing that includes such Assumed Contracts and Leases, each of the Assumed Contracts and Leases shall be deemed neither assumed nor assigned/subleased and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.

The Purchaser shall have no rights in and to a particular executory contract or unexpired lease until such time as the particular executory contract or unexpired lease is assumed and assigned in accordance with the procedures set forth herein.  In the event that the Purchaser is not a Successful Bidder at the Auction, the Debtors reserve the right to modify these Assignment Procedures.  Under no circumstances will the Debtors be deemed to have assumed an executory contract or unexpired lease without a corresponding assignment of such an executory contract or unexpired lease to the Purchaser pursuant to the terms of the Transaction Documents and an order of the Bankruptcy Court approving such assumption and assignment.  The Debtors reserve the right to cancel the assumption of any executory contract or unexpired lease no later than ten business days after a final order determining a cure amount greater than that proposed by the Debtors.

## <u>ANNEX C</u>
### STALKING HORSE, AUCTION AND SALE NOTICE

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Adam C. Rogoff
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Proposed Counsel for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| GENERAL MARITIME CORPORATION, et al., | ) |
| | ) Case No. 11-15285 (MG) |
| Debtors. | ) |
| | ) Joint Administered |
| | ) |
| | ) **Related to Docket No.** |

**NOTICE OF STALKING HORSE AGREEMENT, AUCTION**
**AND SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE**:

On _____, 2011, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Order**")[1] approving, approving among other things, certain bidding procedures in connection with the potential auction (a "**Auction**") and sale (the "**Sale**") of substantially all of the debtors' assets free and clear of all liens, claims and encumbrances (the "**Assets**") in the event of a Trigger Event (the "**Bidding Procedures**").[2]

---

[1] The Court entered the Order in connection with the Debtors' motion seeking entry of an (I) Order approving (A) bidding procedures, (B) Assumption and Assignment Procedures, and (C)Break-up Fee and Expense Reimbursement in Connection with the Potential Auction and Sale; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (C) Scheduling an Auction and Sale Hearing (the "**Motion**").  .

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Bidding Procedures.

A Trigger Event occurred on _____.  Accordingly, the Debtors are now in the process of engaging in the Sale of their Assets subject to the procedures set forth in the Order and the Bidding Procedures.

On [   ], the Debtors and [    ] entered into a stalking horse asset purchase agreement (the "**Stalking Horse APA**") that provides for [   ].

Within three business days after the entry of this Notice (the "**Stalking Horse, Auction and Sale Notice Date**"), the Debtors will serve by first class mail an omnibus notice (the "**Initial Assignment Notice**") on each Counterparty to the Assumed Contracts and Assumed Leases (and such party's attorney, if such attorney has filed a notice of appearance in the Debtors' chapter 11 proceedings) at the last known address available to the Debtors and the notice address of such counterparty provided in each such contract or lease, if applicable.

Pursuant to the Bidding Procedures Order, any party wishing to participate in the bidding process and the Auction must do so in accordance with the Bidding Procedures, including the submission of a written offer or group of offers such that it is actually received no later than _____, 2011 at 4:00 p.m. prevailing Eastern Time by the parties identified in the Bidding Procedure Order.

If the Debtors receive competing bids within the requirements and time frame specified by the Bidding Procedures, such that the bids are deemed Qualified Bids by the Debtors in consultation with the Committee, the Debtors will conduct the Auction on _____, 2011 at 4:00 p.m. prevailing Eastern Time at the offices of Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, or at any such other location as the Debtors may hereafter designate (with notice of such of alternate location given to all qualified bidders under the Bidding Procedures).

The Debtors will seek approval of the Sale before the Honorable Martin Glenn, United States Bankruptcy Judge, in Courtroom 501 at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, on _____, 2011 at __:__ prevailing Eastern time, to consider the entry of an order approving, among other things, the Sale (the "**Sale Hearing**"). The Sale Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on the list of parties entitled to notice.

If you would like to obtain a copy of the Motion, the Bidding Procedures, the Bidding Procedures Order or related documents, you should contact GCG, Inc., the voting and claims agent retained by the Debtors in these chapter 11 cases, by: (a) calling the Debtors' restructuring hotline at (888) 435-3302 (international (614) 553-1243); (b) visiting the Debtors' restructuring website at: http://www.gmrrestructuring.com; (c) e-mailing the Debtors at GMRRestructuring@gcginc.com and/or (d) writing to General Maritime Corporation, c/o GCG, P.O. Box 9844. You may also obtain copies of any pleadings filed in these chapter 11 cases, including the Bidding Procedures, for a fee via PACER at: http://ecf.nysb.uscourts.gov.

The deadline for filing objections to the Stalking Horse APA, the Sale or any other remaining relief requested in the Motion is _____, 2011 at 4:00 p.m. prevailing Eastern Time.[3]  Any objections must: (a) be made in writing; (b) conform to the Bankruptcy Rules, the Local Rules and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and if practicable, a proposed modification to the terms of the Sale that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before _____, 2011 at 4:00 p.m. prevailing Eastern Time: (a) Debtors' counsel, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Kenneth H. Eckstein, Esq., Adam C. Rogoff, Esq., and Douglas H. Mannal, Esq.; (b) counsel for the DIP Agent and the Prepetition Senior Agent, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036-2787, Attn: Thomas Lauria, Esq., Scott Greissman, Esq., Andrew Ambruoso, Esq.; (c) counsel to Oaktree, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Samantha Good, Esq. and Candace Wilhelm, Esq.; (d) the Senior Notes Indenture Trustee, The Bank of New York Mellon, 101 Barclay Street, 8 West, New York, New York 10286, Attn: Beata Harvin; (e) counsel to the Committee, Jones Day, 222 East 41st Street, New York, New York 10017-6702, Attn: Paul Leake, Esq. and Pedro A. Jimenez, Esq.; (f) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Paul K. Schwartzberg, Esq.; (g) the U.S. Securities and Exchange Commission; (h) the Internal Revenue Service; and (i) counsel to any statutory committees appointed in these Chapter 11 Cases; and (j) counsel to the Alternative Stalking Horse, if any.

Dated: New York, New York
_____, 2011

                              KRAMER LEVIN NAFTALIS & FRANKEL LLP

                              /s/_____
                              Kenneth H. Eckstein
                              Adam C. Rogoff
                              Douglas H. Mannal
                              Stephen D. Zide
                              1177 Avenue of the Americas
                              New York, New York 10036
                              Telephone: (212) 715-9100
                              Facsimile: (212) 715-8000
                              *Proposed Counsel for the Debtors*

---

[3] Provided, however, that the deadline with respect to the Official Committee of Unsecured Creditors shall be [___] at 4:00 p.m. prevailing Eastern Time.

- 4 -